**UNITED STATES of America**

v.

**Herman Max RUTH, Appellant.**

**No. 15956.**

United States Court of Appeals
Third Circuit.

Argued March 18, 1968.

Decided May 8, 1968.

Joseph L. Garrubbo, Vieser, Hoey & San Filippo, Newark, N. J., for appellant.

Don Allen Resnikoff, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., Marlene Gross, Asst. U. S. Atty., on the brief), for appellee.

Before McLAUGHLIN, FORMAN and FREEDMAN, Circuit Judges.

### OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

Defendant, Ruth, appeals from a judgment of conviction entered in the District Court for the District of New Jersey after a trial before the Court and a jury on an indictment charging a violation of Title 18 U.S.C. § 2312 in that he did wilfully and knowingly transport in interstate commerce a certain motor vehicle knowing the same to have been stolen.

At the defendant's trial the Government offered evidence to prove that a 1964 Mack Diesel tractor valued at over $14,000 and owned by Chemical Leasing Company was leased to Paragon Oil Company who in turn delivered it to one Martin E. Bostwick for the purpose of having some alterations made. Bostwick testified that he last saw the tractor on his premises in Linden, New Jersey on December 5, 1964, and discovered it was missing on December 7, 1964.

Edward Ger, a friend of the defendant, appeared as a Government witness. He testified that the defendant drove him from New Jersey to Brooklyn, Connecticut in mid November, 1964. The purpose of the trip was to enable Ger to meet with one August Nukala in order to discuss the possibility of using Nukala's I.C.C. authority. Ger further testified that while he was with Nukala and the defendant, the latter discussed renting space in Nukala's garage, and that he saw the defendant pay Nukala $100. as rent for one month.

Mr. Nukala was called as a Government witness and his testimony concerning the rental of garage space corroborated that of Ger.

The Government's case against Ruth consisted of testimony from the foregoing witnesses and others who placed the stolen tractor first in New Jersey and then in Brooklyn, Connecticut. The evidence relating the defendant to the actual transportation of the vehicle consisted of an oral statement given by the defendant to agents of the Federal Bureau of Investigation while the defendant was in custody in the Passaic County Jail on another charge.

In this appeal defendant urges error in the admission of this statement claiming that its admission violates his constitutional right to remain silent and his right to counsel. In addition the defendant urges error in the charge given to the jury.

Prior to admitting the statement in question the Court held a preliminary hearing in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) at which time the Government presented the testimony of Charles Coe, a New Jersey State Trooper, and Walter J. Slaughter, an agent of the Federal Bureau of Investigation. Trooper Coe testified that Agent Slaughter advised the defendant of his right to remain silent, to have an attorney if he wished and also that any statement he gave would have to be voluntary with no threats, reward or promises of any kind. Agent Slaughter's testimony corroborated this. He stated, "When I first met him, I introduced myself as Special Agent, Federal Bureau of Investigation. Inasmuch as I never met him before, I also introduced Agent Snyder to him, and I immediately advised him he did not have to say anything to me, that anything he did say could be used against him in a Court of Law. He had a right to counsel, and if he couldn't afford one the Judge would get one for him, that anything he did say could be used against him in Court."

Agent Slaughter testified that the defendant refused to give a written statement before he consulted with an attorney but said that he would give an oral statement without implicating anyone else. Slaughter then questioned the defendant for approximately twenty or twenty-five minutes. Regarding the matter of counsel, Slaughter stated that the name of Edward D'Alessandro was mentioned as having previously represented the defendant, but the defendant indicated that he did not have the funds necessary to retain him in connection with the matter under investigation.

The defendant took the stand and denied that he was apprised of his rights by Agent Slaughter. He testified that the reason he made any statement was because the officers told him they had statements from his wife, her father and her uncle and that they had charges against these people. He explained that he made a statement in return for the officer's promises not to prosecute his wife and her relatives. The testimony of the officers contradicted that of the defendant. They denied threatening the defendant in any manner and specifically stated that they did not make any promises regarding the alleged charges referred to by the defendant.

On cross-examination, referring to the defendant's refusal to give a written statement prior to consulting with counsel, Slaughter stated:

"A. He said he would not give us a signed statement until he consulted with his attorney, Mr. D'Alessandro. I said would you speak to me then about the situation. He said, 'I'll tell you orally what happened, but I will not implicate anyone else.'

Q. So that between this no, I won't give a written statement but I'll give an oral, there was a question by you?

A. Yes.

Q. So it didn't come out in one long string?

A. No."

From this colloquy defendant argues that he was not effectively warned of his right to remain silent because he did not understand that both a written and an oral statement could be admissible.

The difficulty with defendant's argument is that his claimed lack of knowledge is not supported by the record. First, when the defendant gave the oral statement in question he refused to mention any specific names and referred to others as "A", "B" or "C". This refusal to implicate others indicates the defendant had knowledge of the effect of any statement he gave whether written or oral. Second, the defendant claimed that he told the agents he would not speak to them as soon as he saw them in the Passaic County Jail. He stated:

"Q. And prior to interrogating you, did they have any conversation with you regarding your right to counsel?

A. I knew as soon as I saw them, I asked for a counsel.

Q. You knew who they were?

A. Yes.

Q. Did they ask to speak with you?

A. They asked to speak with me. I said, 'I'll give you my name and address and that's it.'

Q. Did you refuse to give them any information or speak to them at all?

A. I refused to talk to them. Then they started on an informal conversation."

From the foregoing colloquy, it appears beyond question that the defendant was well aware of his right not to speak. Third, the defendant was far from a first offender. The record clearly indicates that the defendant had been convicted of several crimes and was well aware of police procedures. Fourth, the defendant made no claim that he misunderstood his rights. His claim was solely that the statement was inadmissible because of the threats and promises he alleged were made by the investigating officers. Fifth, Agent Slaughter testified that in his experience with the F.B.I. he had encountered persons who were willing to give oral statements but just did not want to go on record as having given a written statement.

■■ All the arguments made by defendant to this Court were presented to the trial Judge prior to his ruling on admissibility. The two versions presented by the defendant and the Government conflicted and presented a clear question of credibility. The trial Judge believed the Government evidence and, therefore, found the statement voluntary and admissible. On this record we must agree.

Defendant also claims his statement is constitutionally inadmissible because he was deprived of his right to counsel. It is conceded by both parties to this appeal that since the trial took place in February, 1966, the stage at which the right to counsel attached was governed by the law as it existed after Escobedo v. State of Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964). Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

The record indicates that the defendant was warned of his right to counsel prior to any questioning by the officers. The defendant denies that he was so warned and states that he told the officers he would not give a written statement before he spoke to a lawyer. No written statement was ever obtained. The defendant chose to speak to the investigating officers. As previously stated the record indicates that Ruth knew the possible incriminating effect of any oral statement he made. With this knowledge he volunteered to speak. Nothing in Escobedo or even in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) prohibited the officers from questioning the defendant under the circumstances before us. We are satisfied that defendant's statement was voluntary and given with full knowledge of his right to counsel.

■ After making a preliminary finding that the statement was voluntary as required by Jackson v. Denno, supra, the trial Judge submitted the issue to the jury. Defendant urges that the Court below erred in its instructions in connection therewith. It is argued that the Judge failed to properly charge regarding mental coercion and the protection of defendant's constitutional rights. In his charge the Judge stated:

"Now, I want to make this as clear as I can to each and all of you. In considering that confession you will bear in mind that it purports to implicate the defendant here in the offense which is charged in this indictment, and if it was given voluntarily, could be considered by you as evidence in this case relating to one of the essential elements of the offense charged, because you see, ladies and gentlemen, we have the motor vehicle accounted for up to a certain point when it was in the hands of this welder down in Parlin, New Jersey, and then we have its discovery at a subsequent date up in Brookline, (sic) Connecticut, but between the evidence of those two situations there is no connection of this defendant with that particular vehicle,

and any transportation thereof from New Jersey to Connecticut other than what is disclosed in his alleged confession. So before you may consider the substance of this alleged confession, you must determine whether or not it was voluntarily made, because if it were forced from the defendant by threats or promises or other forms of putting it there or by reason of any pressure brought to bear by the representatives of law enforcement, if this confession were forced out of this defendant, then it would not be voluntarily, (sic) and if it were not voluntarily, (sic) the substance thereof would have to be disregarded by you."

After completing his charge the Judge asked counsel for the defendant if there was any objection. Counsel indicated that the Judge should distinguish between physical as opposed to psychological threats or promises. The Judge declined to amplify what he had previously charged. His decision was discretionary and his refusal was sound. In charging the jury he had clearly stated that they were to consider the testimony concerning the alleged "threats or promises or other forms of putting it there or by reason of any pressure brought to bear by the representatives of law enforcement * * *." That statement fairly included psychological coercion and is not erroneous merely because it did not adopt the language preferred by counsel.

■ As to the claim that the Judge erred in not instructing the jury regarding defendant's constitutional rights, after hearing defense counsel's objections, the Judge added:

"With respect to my reference, ladies and gentlemen, to the constitutional right of the defendant not to be compelled to testify against himself or give evidence against himself I mentioned in passing that he also had the constitutional right to be represented by counsel, if he desired. It is for you to determine in considering the pre-

liminary question of voluntariness of the alleged confession whether or not under all the circumstances he was deprived of counsel."

Following the above addition to the charge given at the request of counsel, the Judge asked for further objections and defense counsel stated he had none. Entirely apart from counsel's acceptance we are convinced that the charge was free from error and adequately protected defendant's constitutional rights.

The judgment of the District Court will be affirmed.

FREEDMAN, Circuit Judge (dissenting):

To me the record in this case shows that the government agents spoke the formal words of the defendant's right to counsel and to remain silent but in effect took advantage of him. They knew that he wished to consult counsel and that he seemed to believe that there was a difference between the effect of a written and an oral statement. Instead of explaining to him the similar effect of either form of statement they pressed him for the oral statement when they must have realized that if they obtained it from him his right to the advice of counsel regarding a statement would be lost. I believe it was the duty of the government agents, knowing that defendant wished to consult with counsel before he would give them a written statement, to make abundantly clear to him the absence of any substantial difference in incriminating effect between a written and an oral statement.

This case is governed by Escobedo v. State of Illinois [1] and the protection which it gives to a defendant requires observance of its spirit and not mere lip service. The rights which *Escobedo* and now *Miranda* [2] confer on defendants may appear at times to police officers as an impediment and we should not encourage their circumvention of these protections

1. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

2. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

by ritual or formula which disregards their substance.

As I view the record the government did not comply with the spirit of the requirements of *Escobedo* and the oral statement therefore was not admissible against defendant. I would therefore reverse the judgment and remand for a new trial.